**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **CHAPTER 7** |
| | : | |
| **KARVADA MONIQUE HURT**, | : | **Case No. 12-21191 (JJT)** |
| | : | |
| **DEBTOR**. | : | |

**APPEARANCES**

Karvada Monique Hurt                                                    Debtor, *Pro Se*
65 Peru Street
Willimantic, CT 06226

Bonnie C. Mangan, Esq.                                               Chapter 7 Trustee
The Law Office of Bonnie C.
Mangan, P.C.
1050 Sullivan Avenue, Suite A3
South Windsor, CT 06074

Peter E. Goss, Esq.                                                       Special Counsel
Wendt & Goss, P.C.
City Center Square, 26th Floor
1100 Main St., Suite 2610
Kansas City, MO 64105

**MEMORANDUM OF DECISION**
**AUTHORIZING COMPROMISE OF PERSONAL INJURY CLAIM**

The matter is before the Court pursuant to an application of Bonnie C. Mangan, the

Chapter 7 trustee herein, for an order approving a Rule 9019 compromise and settlement of

Karvada Monique Hurt's (the "Debtor") personal injury claims.  The Debtor objects to the

Settlement as providing insufficient proceeds, given the severity of her injury.  After reviewing

the relevant pleadings and case law, and surveying the parties and weighing their arguments, the

Court grants the motion to approve the settlement.

## *FACTS*

On May 14, 2012, the Debtor filed a voluntary petition for relief under Chapter 7 of the

United States Bankruptcy Code.  Bonnie C. Mangan ("Trustee") was appointed as the Chapter 7

Trustee duly qualified and is presently acting as such.

At the time of the filing of the petition, the Debtor was a plaintiff in a multi-district

personal injury action (the "MDL Action") against Bayer Corporation entitled *In re Yasmin &*

*Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.* (MDL No. 2100) ("*In re*

*Yasmin*").  At its height, the MDL Action was comprised of approximately six thousand cases.

*See In re Yasmin*, 2011 WL 1375011 at *1 (S.D. Ill. Apr. 12, 2011)[1].  On October 25, 2013, the

Court authorized the Trustee to retain Wendt Goss, P.C. ("Wendt Goss"), the firm initially

retained by the Debtor, as special counsel to the estate.

The presiding judge in the MDL Action encouraged the parties to undertake mediation.

Before a third-party, independent mediator with decades of relevant experience, Wendt Goss

negotiated a settlement of the Debtor's claims for two hundred and fifteen thousand dollars (the

"Recovery") in return for a customary release agreement that would conclusively resolve the

Debtor's claims.  The Trustee has estimated that a surplus of approximately seventy thousand

dollars would be available to the Debtor after payment of all scheduled creditors' claims, though

certain unscheduled medical liens may reduce that figure.  The Debtor is opposed to signing the

settlement agreement, expressing concern about the uncertain value of her residual recovery.  In

---

[1] *See also* http://www.ilsd.uscourts.gov/mdl/mdl2100.aspx.

response, Wendt Goss re-engaged settlement negotiations and attempted to achieve a higher figure. They were unsuccessful and believe further efforts to enhance the settlement recovery would not be productive.

Following the Trustee's motion for approval of the settlement, the court held two hearings before taking the matter under advisement. The first hearing was adjourned to provide the Debtor an opportunity to retain independent counsel to evaluate the Recovery, to explore alternatives and to potentially prosecute her claims. At the second hearing, the court heard all parties and extensively surveyed special counsel about the pending litigation, the strengths and weaknesses of the claims, the risks and costs of litigation, the range of outcomes in the MDL cases and other matters related to the reasonableness of the settlement.

Over the past several years, Wendt Goss has been engaged to prepare, prosecute and settle hundreds of cases in connection with *In re Yasmin*. The national average recovery for cases similar to the Debtor's – which involve an increased risk of venal blood clots associated with use of the birth control medication Yasmin – is approximately one hundred and seventy-five thousand dollars. Wendt Goss achieved an above average settlement recovery in this case, as the Debtor suffered a pulmonary embolism in addition to increased risk of future venal injury.

The clear majority of cases associated with *In re Yasmin* have settled, and there are currently no plans to bring the remaining cases to trial any time soon. Wendt Goss estimates that litigation costs to proceed through trial would exceed one million dollars, and thus would prove uneconomical to prosecute on an individual basis. Wendt Goss further opined that the plaintiffs' steering committee in the MDL Action was unable to identify an expert witness who would attest to a linkage between Yasmin and increased risk of arterial blood clots.

While this Court has sought to elicit a substantive justification for the Debtor's position, the Debtor, a *pro se*, merely protested in response that she believes her claims are worth substantially more than the Recovery. Despite her efforts, however, the Debtor has not been able to identify alternate contingency-fee counsel or any resource that would assure a timely and substantial recovery. Further, the Debtor, admittedly, lacks the resources to prosecute the action on her own or to support her apparent view – contrary to those of medical experts surveyed by the plaintiffs' steering committee in the MDL Action – of causal links between Yasmin and the full range of her injuries.

### *DISCUSSION*

Rule 9019 of the Federal Rues of Bankruptcy Procedure provides, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. A court may approve a settlement under Rule 9019 if it is fair, equitable and in the best interests of the estate. *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). The decision whether to accept or reject a settlement lies within the court's sound discretion. *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014).

Though the court need not conduct an independent investigation or hold a mini-trial of the facts underlying the dispute, it must apprise itself of sufficient facts to make a considered and independent determination as to "whether the settlement falls below the lowest point in the range of reasonableness." *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997) (*citing In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983)). In doing so, bankruptcy judges are "permitted to rely upon opinions of the trustee, the parties, and their attorneys." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010).

Citing the Supreme Court's seminal decision in *TMT Trailer Ferry. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), the Second Circuit set forth seven factors to guide the determination as to whether a proposed settlement crosses the threshold of reasonableness:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay ...; (3) the paramount interests of the creditors ...; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting ... the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*) ("*Iridium* "), 478 F.3d 452, 462 (2d Cir. 2007) (internal quotations omitted).

The only objection to the proposed settlement was lodged by the Debtor. While the Court is sympathetic to the Debtor's concerns, and the ostensible burdens and severity of her injuries, the Trustee's satisfaction of each of the *Iridium* factors (as discussed herein) weigh heavily in favor of approving the settlement.

If the proposed settlement is approved, the Recovery would enable full payment to all creditors of the estate, and would bear the potential for a significant residual to the Debtor.[2]

If the Court were to reject the settlement, however, all parties in interest would face substantial uncertainty, compounded by delays, increased costs and protracted litigation. The complexity and protracted nature of further litigation would almost certainly outpace any net recovery achievable on behalf of an individual plaintiff. As such, it is highly unlikely, at this

---

[2] Any residual recovery accruing to the Debtor will be enhanced by the Trustee's successful effort to reduce the Debtor's education loan debt by approximately one hundred thousand dollars, and by Wendt Goss's agreement to reduce its contractually-entitled contingent fee.

juncture, that experienced counsel exits who would be willing to take on such an uneconomical task, or who could reasonably assure a substantially better outcome.

There can be no doubt, moreover, that the proposed settlement crosses the threshold of reasonableness and serves the paramount interests of creditors.  The proposed settlement was achieved by arm's length negotiation, the Recovery is greater than the national average for similarly-situated plaintiffs, and the recommendation of experienced special counsel in support of this resolution weighs heavily.[3]  Accordingly, the proposed settlement is approved and the Debtor is directed to cooperate in its implementation.[4]

An appropriate order follows.

IT IS SO ORDERED at Hartford, Connecticut this 4th day of January 2017

James J. Tancredi
United States Bankruptcy Judge
District of Connecticut

---

[3]  The sixth *Iridium* factor, regarding "the nature and breadth of releases to be obtained by officers and directors," bears little weight in the instant case.  The terms of the release were negotiated as part of a global resolution in the MDL Action, and no interested party here has contested its nature or scope.

[4]  To the extent the Debtor declines to cooperate, the Trustee may seek further relief from this Court.